# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Sunlighten, Inc.,

    Plaintiff

v.

Finnmark Designs, LLC,

    Defendant

Case No.: 2:20-cv-00127-JAD-EJY

**Order Granting in Part Defendant's Motions for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment**

[ECF Nos. 48, 66, 67]

Sunlighten, Inc. brings this suit against Finnmark Designs, LLC for the alleged infringement of its infrared-sauna patents and common-law trademarks.[1]  Finnmark moves for summary judgment on all of Sunlighten's claims, and Sunlighten moves for summary judgment on its patent-infringement claims.[2]  Finnmark contends that Sunlighten's patents cannot claim priority to the filing date of their first applications and are invalidated by Sunlighten's sale of the patented products prior to their later claim-priority date.  Finnmark alternatively argues that even if Sunlighten is entitled to the earlier claim-priority date, one of its patents is anticipated by prior art.  Sunlighten also moves for summary judgment on the merits of its patent-infringement claims.

Finnmark separately moves for summary judgment on Sunlighten's trade-dress infringement claim, contending that Sunlighten cannot prove that its sauna design has achieved secondary meaning such that potential customers would associate its features exclusively with Sunlighten.  And Finnmark moves for summary judgment on Sunlighten's federal unfair-competition, Nevada deceptive-trade-practices, and Nevada trademark-infringement claims

---

[1] ECF No. 1 (complaint).

[2] ECF No. 48; ECF No.66; ECF No. 67.

relating to Sunlighten's alleged trademark "Empower" because Sunlighten cannot prove actual damages or Finnmark's willful use of that mark.

I grant Finnmark summary judgment on Sunlighten's patent-infringement claims because Sunlighten is not entitled to the priority filing date of the patents' parent applications, and Sunlighten sold its saunas one year prior to the filing date of the patent's later-filed applications. Because those patents are invalid, I deny as moot Sunlighten's motion for summary judgment on the merits of its patent-infringement claims.  I grant Finnmark's motion as to the trade-dress infringement claim because Sunlighten has failed to produce evidence demonstrating secondary meaning.  And I grant Finnmark summary judgment to the extent it precludes a finding of actual damages because there is no evidence to support such damages, but deny it with respect to the remedies of disgorgement of profits and injunctive relief.  So this case will proceed only on Sunlighten's trademark-infringement claims related to the Empower mark.  But first, I order the parties to a mandatory settlement conference with the magistrate judge.

**Background**

I.    **The '972 patent**

Sunlighten filed patent application 29/356,445 (the '445 application or '972's parent application) for the design of two of its saunas on February 10, 2010.[3]  The patent examiner noted that the application initially included two embodiments of the design in violation of 35 U.S.C. § 121, and after a conversation with Sunlighten's attorney, the U.S. Patent and Trademark

---

[3] ECF No. 1-1 at 2; ECF No. 48-5 (portions of the '445 application).

Office (USPTO) examiner withdrew the second embodiment.[4]  That second embodiment included the following drawings:[5]



FIG. 6



FIG. 7



FIG. 8



FIG. 9

---

[4] ECF No. 48-5 at 11–12.

[5] *Id.* at 21–23.

On June 29, 2012, Sunlighten filed application 29/426,034 (the '034 application) to patent that second embodiment.[6]  But the examiner objected to Sunlighten's characterization of the application as a continuation of the '445 application because "it contains matter not disclosed in the prior-filed application," and the examiner required Sunlighten to change the relationship to a "continuation-in-part" of the parent application.[7]  The examiner explained the differences in these images:[8]




Sunlighten acquiesced and changed the application to a continuation-in-part while submitting that the '034 application "does not include any new matter by including boundary lines that were not included in the parent application."[9]  The examiner declined to determine claim priority

---

[6] ECF No. 48-6 (portions of the '034 application).

[7] *Id.* at 6.

[8] *Id.* at 7–8.

[9] *Id.* at 4.

because there was no evidence of prior art necessitating that determination at the time.[10]  The

patent office otherwise accepted the application and issued the '972 patent with the following

images:[11]



FIG. 1



FIG. 2



FIG. 3

### B.    The '033 Patent

Sunlighten also filed patent application 29/356,440 ('440 application or '033's parent

application) on February 10, 2010.[12]  The examiner again cancelled one set of drawings because

the application included two distinct embodiments of the design.[13]  Sunlighten then filed

application 29/4267,271 (the '271 application) on July 16, 2012.[14]  Again, the examiner objected

to Sunlighten's characterization of the '271 application as a continuation of '440 application,

noting that "the application contains matter not disclosed in the prior-filed application" because

---

[10] *Id.* at 7.

[11] ECF No. 31-1 (the '972 patent).

[12] ECF No. 48-7 (portions of the '440 application).

[13] *Id.* at 4–5.

[14] ECF No. 48-8 (portions of the '271 application).

it "does not disclose changes in appearance of certain areas and additional separated features shown in the instant application."[15]  The examiner showed the changes in the following images:[16]







---

[15] *Id.* at 15.

[16] *Id.* at 16–18.

The examiner also objected to the application because it was "indefinite and nonenabling" and required Sunlighten to file new images that corrected the noted deficiencies.[17]  Sunlighten filed replacement images in response to the examiner's objections, and the USPTO issued the '033 patent with the following images:[18]



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5

[17] *Id.* at 19.

[18] ECF No. 31-2 at 3–6 (the '033 patent).

### III.   Sunlighten's alleged common-law trademarks

Sunlighten sells its infrared saunas under the trademark "mPulse."[19]  Its five-person infrared-sauna model is called the "mPulse Empower."[20]  Sunlighten has not registered the Empower mark but alleges that it has a common-law trademark for the mark that Finnmark infringed upon by selling three sauna models using the word Empower.[21]  After Sunlighten filed its complaint on January 21, 2020, it sent Finnmark a letter notifying it that Sunlighten believed Finnmark was infringing on its Empower mark.[22]  On January 22, 2020, Finnmark stopped using "Empower" in connection with its saunas, has not used the name since, and has declared that it "has no intent to ever use that name in connection with its saunas."[23]

## Discussion

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[24]  When considering a summary-judgment motion, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[25]  When the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[26]  The movant need only

---

[19] ECF No. 70-2 at 2 (copy of Sunlighten's mPulse Empower website).

[20] *Id.*

[21] ECF No. 70 at 9–10 (Sunlighten's statement of facts).

[22] ECF No. 67 at 6 (citing ECF No. 67-2).

[23] *Id.* (citing ECF No. 67-3).

[24] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[25] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[26] *Celotex*, 477 U.S. at 323.

defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[27]

**I.      Sunlighten's patent-infringement claims**

      **A.      Sunlighten's patents are not entitled to claim priority.**

      Finnmark contends that Sunlighten's patents are not entitled to the claim-priority date of their parent applications.[28] "Entitlement to priority under [35 U.S.C.] § 120 is a matter of law."[29] To show entitlement to a parent application's effective filing date, a continuation application "must comply with the written description requirement of 35 U.S.C. § 112."[30] A design patent's written description is provided solely through drawings.[31] A design complies with the written description when "the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."[32] "[W]hen an issue of priority arises under § 120 in the context of design patent prosecution, one looks to the drawings of the earlier application for disclosure of the subject matter claimed in the later application."[33]

---

[27] *Id.* at 322.

[28] The parties have submitted claim-construction briefs in this case, but the court has not yet scheduled a claim-construction hearing. Finnmark contends that resolution of its motion does not depend on claim construction, and Sunlighten does not dispute that suggestion. The resolution of all patent claims by this order obviates the need for a claim-construction hearing.

[29] *In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013).

[30] *Id.*

[31] *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1564 (Fed. Cir. 1991).

[32] *Owens*, 710 F.3d at 1366 (quotation omitted).

[33] *Id.* (citations omitted).

Finnmark relies heavily on the Federal Circuit's opinion in *In re Owens*[34] to contend that Sunlighten's patents are not entitled to the filing date of their parent applications.[35]  *Owens* addressed a patent application in which the drawing in an inventor's parent application was substantially similar to the drawings in a continuation application, save for the addition of boundary lines intersecting the design and disclaiming some portions of his design.[36] The court explained the use of boundary lines in design patents and their effect when added to a continuation application:

> [W]hen an unclaimed boundary line divides a previously claimed area, it indicates that the applicant has disclaimed the portion beyond the boundary while claiming the area within it.  Where permissible, unclaimed boundary lines allow the patentee to adjust his patent coverage and encompass embodiments that differ slightly but insignificantly from the originally [] filed design.  However, like all amendments made during prosecution, these lines must comply [with] the written description requirement to receive the benefit of priority under § 120.[37]

The Federal Circuit reasoned that, while "a design patentee may, under certain circumstances, introduce via amendment a straight broken line without adding new matter," an applicant who has been "granted a claim to a particular design element" may not "proceed to subdivide that element in subsequent continuations however he pleases."[38]  In that case, the patentee initially applied for a patent relating to the design of a bottle but changed that application to include a boundary line around one specific portion of the bottle.[39]  The Federal Circuit ruled that, because

---

[34] *Owens*, 710 F.3d 1362.

[35] ECF No. 48 at 20–21; ECF No. 73 at 8–9.

[36] *Owens*, 710 F.3d at 1363–66.

[37] *Id.* at 1367.

[38] *Id.* at 1366, 1368.

[39] *Id.* at 1366.

the parent disclosure did not "distinguish the now-claimed" portion from the rest of the design in any way, it did not fulfill the written-description requirement.[40]

Sunlighten does not distinguish, or even address, *Owens*.  It instead appears to severely misconstrue Finnmark's argument.  Sunlighten devotes the majority of its response brief to insisting that any features represented in dotted or "broken" lines in its continuation-in-part application represent unclaimed matter and contending that Finnmark is attempting to show those features actually represent claimed matter.[41]  But Finnmark's argument concerns boundary lines bisecting Sunlighten's designs—not dotted lines marking unclaimed matter—that were wholly absent from the parent applications but enclosed certain claimed matter in the continuation-in-part applications.

Sunlighten does appear to contend that it may disclaim portions of its original design at will, while maintaining claim priority for a continuation-in-part application that claims only specific portions of the original design.  Like in *Owens*, Sunlighten's "argument is premised on the notion that an applicant who has possession of an entire area in a parent application must likewise possess all parts of the area," and Sunlighten contends that it "should now be permitted to disclaim any portion of [its] original design in a continuation and still survive the written description test."[42]  But *Owens* precludes this.  As the *Owens* court explained in response to the same argument, "the written description question does not turn upon what has been disclaimed, but instead upon whether the original disclosure 'clearly allows persons of ordinary skill in the

---

[40] *Id.* at 1368.

[41] ECF No. 68 at 17–22.

[42] *Owens*, 710 F.3d at 1367.

art to recognize that the inventor invented what is *claimed*.'"[43]   The question is thus "whether a skilled artisan would recognize upon reading the parent's disclosure" that a specific portion of the patent "might be claimed separately from the remainder of the area."[44]

Here, the answer to that question is no.  Sunlighten's parent applications claimed each and every portion of the mPulse sauna design—with the sole exception of door hinges—and included a breadth of features, like design elements on the roof, seats, and floor; a horizontal channel that narrowed in some areas and widened in others, and a rounded door handle.  The '972 continuation-in-part application adds boundary lines around the horizontal channel and disclaims other portions of the design that were expressly claimed in the original disclosure.  The '033 continuation-in-part application goes further, adding boundary lines to just two small portions of the exterior of the sauna—the rest of which was claimed in the original disclosure— and disclaiming the majority of the interior design of the sauna claimed in the original disclosure. Sunlighten's changes from the parent to the continuation-in-part applications do not "make explicit a boundary that already exists, but was unclaimed in the original disclosure" and therefore do not satisfy the written description requirements under *Owens*.[45]   The patents are thus not entitled to claim priority to the date of their parent applications.  They are instead entitled to claim priority to the effective filing date of their continuation-in-part applications: June 29, 2012, for the '972 patent and July 16, 2012, for the '033 patent.

---

[43] *Id.* (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)).

[44] *Id.*

[45] *Id.* at 1369.

**B.     The saunas represented in both patents were sold more than a year prior to their effective filing dates and the patents are thus invalid.**

Under the applicable version of 35 U.S.C. § 102(b), "an inventor is not entitled to a patent if 'the invention was . . . [in public use or] on sale in this country more than one year prior to the date of application for patent in the United States.'"[46]  The party asserting invalidity based on prior art must prove it by clear and convincing evidence.[47]  "Once it has established a prima facie case of invalidity and its burden is met, 'the party relying on validity is then obligated to come forward with evidence to the contrary.'"[48]

Finnmark points to Sunlighten's own statements in discovery responses and its CEO's deposition testimony to show that Sunlighten began to sell its patented saunas as early as September 30, 2009, and first publicly used those saunas by advertising them on the Dr. Oz. show on January 6, 2010.[49]  Based on these statements, Finnmark has shown by clear and

---

[46] *Pfaff v. Wells Electronics, Inc.*, 124 F.3d 1429, 1432 (Fed. Cir. 1997) (quoting 35 U.S.C. § 102(b)).  In 2011, Congress enacted the Leahy-Smith America Invents Act (AIA), which amended § 102.  Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 286 (2011).  Because the applications for Sunlighten's patents were filed before March 16, 2013—the effective date of the AIA—the validity issues here are governed by the pre-AIA language.  *See Hologic, Inc. v. Smith & Nephew, Inc.*, 884 F.3d 1357, 1361 n.2 (Fed. Cir. 2018).

[47] *Power Oasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008).

[48] *Id.* (quoting *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1573 (Fed. Cir. 1985)).

[49] ECF No. 48 at 18 (citing ECF No. 48-9 at 6–7 (Sunlighten's interrogatory responses, stating "Sunlighten's saunas covered by the '972 and '033 patents are marketed under the trademark "mPulse" series of saunas.  Sunlighten has marketed and offered its mPulse saunas . . . exclusively and continuously since at least as early as September 30, 2009"); ECF No. 48-10 at 7–8 (Sunlighten's discovery responses, indicating that the first public use of any product embodying the design claimed in the '033 patent was on the Dr. Oz show); ECF No. 48-11 (Sunlighten blog post announcing that the mPulse sauna will appear on the Dr. Oz. show on January 6, 2010)); *see also* ECF No. 73-3 at 3–5 (deposition testimony of Sunlighten's CEO stating that Sunlighten "officially launched" the patented designs on the Dr. Oz show in 2010, began pre-selling the saunas "a couple of months" before that, and began shipping to customers "sometime in Q1 of 2010.").

convincing evidence that Sunlighten's patented saunas were sold or in public use at least as early as 2010—two years before the effective filing dates of the continuation-in-part applications. Sunlighten's only response to this argument is to state, without any support, that "the mPulse saunas that pre-date the issue date of the '972 and '033 patents were not covered by the '972 and '033 patents."[50]  But "a party cannot create a genuine issue of fact sufficient to survive summary judgment by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity."[51]  Sunlighten's unsupported and conclusory statement does not constitute evidence contrary to Finnmark's proof that the patented designs were on sale and in public use more than one year prior to their effective filing date.  I thus find that the patents are invalid and grant Finnmark summary judgment on Sunlighten's patent-infringement claims.[52]

**III.     Sunlighten presents no evidence to support its trade-dress claim.**

Sunlighten alleges that Finnmark violated the trade-dress provisions of the Lanham Act by trading off the design of Sunlighten's saunas.[53]  Sunlighten has not registered its trade dress with the U.S. Patent and Trademark Office.[54]  Finnmark contends that Sunlighten's alleged trade dress—which is for the design of Sunlighten's saunas, specifically the "vertical side panels

---

[50] ECF No. 68 at 7, ¶ D13.

[51] *In re Cygnus Telecomm. Tech., LLC*, 536 F.3d 1343, 1354 (Fed. Cir. 2008) (quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999)).

[52] Because I find that Sunlighten's sale of its saunas before the patents' effective filing dates invalidates those patents, I do not reach Finnmark's argument that the patents are anticipated by the sale of the SolarSpa—an infrared sauna sold by nonparty Luxsauna—that looks remarkably similar to the mPulse models.  Nor do I need to resolve the evidentiary objections Sunlighten raises with respect to Finnmark's evidence proffered to show that the SolarSpa was sold prior to the effective filing date of Sunlighten's patents.

[53] ECF No. 1 at 6–7.

[54] ECF No. 48-17 at 8–9.

separated by a horizontal channel, upper and lower horizontal trim, and a glass door offset to one side of the sauna"[55]—is not protectable under the Lanham Act because Sunlighten cannot establish that the design has acquired secondary meaning.[56]

    In addition to protecting registered trademarks, the Lanham Act also "gives a producer a cause of action for the use by any person of 'any word, term, name, symbol, or device, or any combination thereof . . . [that] . . . is likely to cause confusion . . . .as to the origin, sponsorship, or approval or his or her goods.'"[57]   The Supreme Court considers "trade dress"—the overall design of a product—to fall under the act's protections.[58]   A trade dress is entitled to the Lanham Act's protections if it has "acquired distinctiveness."[59]   A trade dress is distinctive if "it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself."[60] Sunlighten, "as the party attempting to establish legal protection for its unregistered trade dress, has the burden of proving secondary meaning by a preponderance of the evidence."[61]   "Whether a particular trade dress has acquired secondary meaning is a question of fact."[62]   To evaluate the sufficiency of evidence of secondary meaning, courts consider "(1) whether actual purchasers of the product bearing the claimed trade dress associate [it] with the producer, (2) the degree and

---

[55] ECF No. 1 at ¶ 51; ECF No. 68-4 at 6–7.

[56] ECF No. 48 at 21.

[57] *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000) (quoting 15 U.S.C. § 1125(a)).

[58] *Id.*

[59] *Id.*

[60] *Id.* at 210–11 (cleaned up).

[61] *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1201 (Fed. Cir. 1994).

[62] *Clock Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001).

manner of advertising under the claimed trade dress, (3) the length and manner of use of the claimed trade dress, and (4) whether use has been exclusive."[63]

Finnmark presents evidence that Sunlighten's purported trade dress has been used by other companies to show that Sunlighten's trade dress is not exclusive.[64]  It also contends that Sunlighten has failed to produce any evidence showing that consumers associate those design portions with Sunlighten or that there has been any "actual customer confusion" related to Sunlighten's purported trade dress, such that no jury could conclude that those design elements have achieved secondary meaning.[65]  Sunlighten responds that it has proven distinctiveness because it has used the trade dress exclusively and continuously for five years.[66]  It relies on statements from its CEO's deposition to claim that it was the first infrared sauna to use vertical

---

[63] *Adidas-Salomon AG v. Target Corp.*, 228 F. Supp. 2d 1192, 1195 (D. Ore. 2002) (citing *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 812, 822 (9th Cir. 1996); *Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 873 (9th Cir. 2002)); *see also Seirus Innovative Accessories, Inc. v. Gordini U.S.A. Inc.*, 849 F. Supp. 2d 963, 984–84 (S.D. Cal. 2012) (stating that secondary meaning can be established either through direct evidence—like the results of customer surveys or direct customer testimony—or circumstantially, through "exclusivity, manner, and length of use, amount and manner of advertising, amount of sales and number of customers, and plaintiff's established place in the market") (quoting *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989)); *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990) ("Proof of secondary meaning entails vigorous evidentiary requirements.").

[64] ECF No. 48 at 15–16.

[65] *Id.* at 22–23.

[66] ECF No. 68 at 18–21 (citing 37 C.F.R. 2.41(a)(2), which states: "In appropriate cases, if a trademark or service mark is said to have become distinctive of the applicant's goods or services by reason of the applicant's substantially exclusive and continuous use of the mark in commerce for the five years before the date on which the claim of distinctiveness is made, a showing by way of verified statements in the application may be accepted as prima facie evidence of distinctiveness; however, further evidence may be required.").  This regulation applies to a written application for trademark protection before the U.S. Patent and Trademark Office, and does not articulate a standard that courts must follow when determining if a plaintiff has demonstrated secondary meaning in the context of a case for infringement of an unregistered trade dress.

side panels and an offset glass door, and that its design includes a horizontal channel and horizontal upper and lower trims.[67]   It does not directly respond to Finnmark's argument that the design has not been exclusive to Sunlighten throughout that time.  Indeed, in other portions of its brief, its own evidence demonstrates that the LuxSauna SolarSpa—an infrared sauna with an offset door, vertical planks, a horizontal channel, and upper and lower horizontal trim, was sold in 2011 and 2012.[68]   Finnmark presents competent evidence that the SolarSpa was also advertised in 2017.[69]   And Sunlighten does not respond to Finnmark's evidence of similar saunas that were advertised between 2005 and 2020.  Sunlighten thus has not produced and cannot produce evidence that its use of trade dress was exclusive for any five-year period.

Even if Sunlighten could show exclusive use, that alone is not sufficient to show acquired distinctiveness.[70]   Sunlighten produces no other evidence to show that its trade dress has achieved secondary meaning.  Finnmark acknowledges that, in response to discovery requests for evidence supporting its trade-dress rights, Sunlighten produced "[a]rticles from doctors who

---

[67] *Id.* at 20.

[68] ECF No. 68 at 8 ("Admitted that LuxSauna first began selling the SolarSpa in 2011."); ECF No. 68-1 at 5–7.  In its statement of facts, Sunlighten denies that "other manufacture[r]s have sold saunas with the mPulse trade dress" but admits that the SolarSpa was sold in 2011 and does not argue or show that the SolarSpa doesn't have every design element it claims as its trade dress.  It relies solely on the deposition of Sunlighten's CEO, in which he opines that customers associate its trade-dress features with Sunlighten because of Sunlighten's advertising efforts.  *See* ECF No. 68 at 4 n.9 (citing ECF No. 68-4 at 9–11).  I've reviewed images of the SolarSpa and have determined that there is no genuine dispute of fact that the SolarSpa includes every trade-dress element Sunlighten identifies.  *See* ECF No. 68-1 at 5–6 (images of LuxSauna's SolarSpa sold 2011 and 2012).  I also acknowledge the parties' disputes concerning the authenticity of documents that Finnmark contends show the SolarSpa being sold as early as 2008.  Because I rely solely on Sunlighten's own admission that the same sauna was indeed sold in 2011 and 2012, I do not reach those authenticity arguments.

[69] ECF No. 73–5.

[70] *See In re Koninklijke Philips Elecs. N.V.*, 112 U.S.P.Q. 2d 1177, at *7 (TTAB 2014) (rejecting application for design of electric-toothbrush head because proof of continuous and exclusive use for 10 years "is generally not sufficient to show acquired distinctiveness") (citations omitted).

endorse Sunlighten's products that include a picture of an mPulse sauna," "documents relating to promotion of Sunlighten's mPulse saunas in Europe," "[v]arious photos, ads and flyers showing mPulse saunas," and "documents relating to Sunlighten's trademark registrations."[71]  But because those records are "voluminous," Finnmark did not attach them to its motion, and Sunlighten didn't provide them in response.  Regardless, Finnmark argues that those documents do not contain any indica of secondary meaning, and Sunlighten does not rebut that argument.[72] Because Sunlighten has presented no evidence to show that its use of trade dress was exclusive for any five-year period, nor has it disclosed any other evidence demonstrating that customers associated the trade dress with Sunlighten or would have been confused by a competitor's sauna with the same design, I grant Finnmark summary judgment on Sunlighten's trade-dress claim.[73]

## IV.   Damages for trademark-infringement claims

Sunlighten's remaining claims concern Finnmark's use of the word "Empower" to advertise their infrared saunas.  Sunlighten alleges that it has used the mark "Empower" to refer to one of its sauna models since 2009 and, though it has not registered the mark, it is entitled to trademark protection.[74]  Sunlighten alleges that Finnmark's use of "Empower" violates the Lanham Act, the Nevada Deceptive Trade Practices Act, and trademark-infringement and unfair-competition protections found in Nevada common law.[75]  Finnmark moves for summary judgment, arguing that Sunlighten has not presented evidence of actual damages and has not

---

[71] ECF No. 48 at 22.

[72] *Id.*

[73] To the extent Sunlighten's remaining trademark-infringement claims are predicated on the alleged infringement of its trade-dress rights, I grant Finnmark summary judgment on those portions of those claims as well.

[74] ECF No. 70 at 5.

[75] ECF No. 1 at ¶¶ 43–49; 58–72.

shown that Finnmark willfully infringed the mark to support damages in the form of
disgorgement of Finnmark's profits, and that an injunction is not an appropriate remedy because
Finnmark has ceased use of the Empower mark.[76]  Sunlighten responds that, because Finnmark
did not address liability for any of its claims, it cannot move for summary judgment on
Sunlighten's trademark-infringement claims based on lack of actual damages alone.[77]  It also
contends that if it proves liability it may be entitled to disgorgement of profits or an injunction
based on the evidence produced thus far.[78]

 "The Lanham Act allows a plaintiff who establishes [trademark infringement] 'to recover
(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the
action.'"[79]  The availability of such damages is "subject to the principles of equity."[80]  The Act
also provides for injunctive relief "upon a finding of a violation" of § 1125(a).[81]  The plaintiff
bears the burden of proving damages.[82]  But as to disgorgement of profits, a plaintiff need only
prove the defendant's sales.[83]  The burden then shifts to defendant to "prove all elements of cost
or deduction claimed."[84]

 To the extent that Finnmark seeks summary judgment on Sunlighten's trademark
infringement claims because Sunlighten hasn't demonstrated actual damages, I deny its motion.

---

[76] ECF No. 67.

[77] ECF No. 70 at 9, 17.

[78] *Id.* at 17–20.

[79] *Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (quoting 15 U.S.C. § 1117(a)).

[80] 15 U.S.C. § 1117(a).

[81] 15 U.S.C. § 1116.

[82] *Rolex Watch U.S.A. Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999).

[83] 15 U.S.C. § 1117(a).

[84] *Id.*

"Actual damages are not a required element for establishing trademark infringement."[85]  If Sunlighten can establish liability on its claims, it may be entitled to other remedies available under the Lanham Act.[86]  But that does not prevent me from determining that Sunlighten has not produced evidence to show there is a genuine dispute of fact as to Sunlighten's actual damages. Finnmark admits that Sunlighten has produced records of lost profits but argues that those records do not attribute lost profits to any confusion over the Empower mark and were "created nearly five months after Finnmark ceased use of the Empower name."[87]  It points to deposition testimony from Sunlighten's CEO admitting that he cannot quantify the sales lost because of Finnmark's use of the "Empower" mark but indicates that Sunlighten sales representatives would have that information.[88]

None of that information appears to have been disclosed, however, and Sunlighten does not include any such evidence in its response. Sunlighten's sole attempt to buttress its entitlement to actual damages is a conclusory statement that "[t]estimony by the parties' representatives as well as the financial data produced during discovery is more than sufficient for a jury to decide what is an appropriate damages award."[89]  Sunlighten has not met its burden to show that it has any evidence of lost profits related to Finnmark's use of the Empower mark, so I grant Finnmark summary judgment as to actual damages.

---

[85] *Shakopee Mdewakanton Sioux Cmty. v. FBCV, LLC*, 2011 WL 4527177, at *2 (D. Nev. Sept. 26, 2011).

[86] Sunlighten argues in a footnote that I should grant it summary judgment on liability based on arguments in its response brief.  ECF No. 70 at 15 n.32.  As Sunlighten has not filed a motion for summary judgment on these claims, as required under Local Rule IC 2-2(b), I decline to consider its request.

[87] ECF No. 74-2 at ¶¶ 8-9 (Giles declaration).

[88] ECF No. 67 at 5; ECF No. 67-6 at 6–7.

[89] ECF No. 70 at 23.

Finnmark also asks that I grant it summary judgment on Sunlighten's ability to obtain disgorgement of profits.  Disgorgement is an equitable remedy that requires courts to consider the "defendant's mental state" to determine whether and how severe a disgorgement remedy should be.[90]  Finnmark first argues that because Sunlighten cannot prove Finnmark's "willful infringement" of the Empower mark, Sunlighten is not entitled to such disgorgement.[91]  But the Supreme Court in *Romag Fasteners Inc. v. Fossil, Inc.* expressly held that a court may award profits even if a defendant's conduct falls below the stringent willful-infringement bar.[92]  Acknowledging *Romag*, Finnmark  instead argues in reply that Sunlighten cannot show that Finnmark was "willfully blind" to the possibility that it was infringing on Sunlighten's mark and is therefore not entitled to profits.[93]  But, while a defendant's mental state must be considered, Finnmark fails to address the wealth of additional factors that a court may consider when evaluating whether to award an infringer's profits.[94]  On this record, I decline to grant summary judgment as to whether Sunlighten may be entitled to Finnmark's profits in the event of a finding of liability.

---

[90] *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).

[91] ECF No. 67 at 6–7.

[92] *Romag*, 140 S. Ct. at 1497.

[93] ECF No. 74 at 13.

[94] *See, e.g.*, *Romag Fasteners, Inc. v. Fossil, Inc.*, 2021 WL 1700695, at *6 (D. Conn. Apr. 29, 2021) (noting that a court must "balance equitable factors including, but not limited to: '(1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) the availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) any delay by the plaintiff; and (5) plaintiff's clean (or unclean) hands.'") (quoting *Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 214 (2d Cir. 2019)).  Finnmark also fails to point to any Ninth Circuit authority on what courts in this circuit may consider before awarding disgorgement of profits.

Finally, Finnmark argues that Sunlighten is not entitled to injunctive relief because Finnmark voluntarily ceased use of the Empower mark when notified that it was potentially infringing and has no intent to resume use.[95]  Sunlighten responds that it is entitled to seek injunctive relief under the statute and is not inclined to take Finnmark at its word that it will never use Empower or similar marks in the future absent an injunction.[96]  Finnmark provides no binding or persuasive authority to support the contention that a court cannot award injunctive relief in the face of a defendant's voluntary cessation of infringing activity.[97]  It is premature to preemptively limit the availability of this relief before the question of liability and the availability of other damages is resolved.  At this stage, I decline to preclude that relief on the basis of Finnmark's assertion that it "has no intent" to use the allegedly infringing mark again. So I deny Finnmark's motion for summary judgment on the question of Sunlighten's entitlement to the remedy of injunctive relief.

---

[95] ECF No. 67 at 8–9.

[96] ECF No. 70 at 19–20.

[97] The cases Finnmark does cite have materially different facts from this one.  In *Affinity Group, Inc. v. Balser Wealth Management, LLC*, the court held that injunctive relief was inappropriate because the defendant had abandoned its infringing business entirely.  2007 WL 1111239, at *4 (S.D. Cal. Apr. 10, 2007).  Finnmark is still in the infrared-sauna business, so *Affinity Group* is inapposite.  Finnmark also cites an order from *Nintendo of America, Inc. v. Storman*, in which the court determined that the defendants' voluntary decision to take down an infringing website precluded injunctive relief.  2021 WL 3556831, at *8 (C.D. Cal. May 26, 2021).  But the court later reversed that decision on reconsideration and granted permanent injunctive relief because the defendant "may relaunch his website which previously contained Plaintiff's copyrighted games."  2021 WL 4780329 at *8 (C.D. Cal. Aug. 5, 2021).  So *Nintendo of America* is not persuasive either.

**Conclusion**

IT IS THEREFORE ORDERED that Finnmark Design's motion for partial summary judgment as to Sunlighten's patent-infringement claims and its trade-dress infringement claims **[ECF No. 48] is GRANTED**.

IT IS FURTHER ORDERED that Sunlighten's motion for partial summary judgment **[ECF No. 66] is DENIED**.

IT IS FURTHER ORDERED that Finnmark Design's second motion for partial summary judgment as to Sunlighten's trademark-infringement and unfair-competition claims **[ECF No. 67] is GRANTED in part as to Sunlighten's actual damages and DENIED in all other respects**. This case proceeds solely on Sunlighten's trademark-infringement and unfair-competition claims related to the Empower mark.

IT IS FURTHER ORDERED that **this case is REFERRED to the magistrate judge for a MANDATORY SETTLEMENT CONFERENCE**. The parties' obligation to file their joint pretrial order is STAYED until 10 days after that settlement conference.

_____
U.S. District Judge Jennifer A. Dorsey
March 31, 2022